UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-10440-GAO

ANNE M. OULTON,
Plaintiff,

v.

BRIGHAM & WOMEN'S HOSPITAL, INC.,
Defendant.

OPINION AND ORDER
March 29, 2013

O'TOOLE, D.J.

The plaintiff, Anne M. Oulton, brings this action against her former employer, Brigham & Women's Hospital ("BWH"), claiming discrimination and retaliation under Title VII and Massachusetts General Laws ch. 151B, retaliation under the Family and Medical Leave Act, and retaliation under Massachusetts General Laws ch. 149, § 187(b). BWH moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

**I.**    **Factual Background**

The Complaint alleges the following facts. The plaintiff began working as a cardiovascular perfusionist at BWH in July 2008. She became pregnant with her third child in 2009. At some point thereafter, she heard Daniel Fitzgerald, the Chief Perfusionist and her supervisor, say to female employees that "they should not have more than one child" and, "[I]f you don't want kids, you need to make a choice not to have kids." (Compl. ¶ 10 (dkt. no. 1).) Fitzgerald made this comment in the presence of the plaintiff, who was by that time visibly pregnant.

The plaintiff informed Fitzgerald of her pregnancy in the fall of 2009, communicating that she did not want to work on any intra-operative hyperthermic chemotherapy ("IOHC") cases and thereby expose herself to toxic chemicals while pregnant. Fitzgerald told her that "it was okay for her to do the IOHC cases during her third trimester" but also asked her, "What would you decide to do if something went wrong with the baby?" (Id. ¶¶ 16-17.) He then scheduled the plaintiff on an IOHC case, but she found a colleague to cover for her.

The plaintiff was on maternity leave from December 7, 2009, to March 2, 2010. When she returned, Fitzgerald increased her work week from three 12-hour shifts to four 12-hour shifts and also designated her as the on-call or alternate on-call perfusionist, increasing her chances of being called into work. While helping the plaintiff set up for an intense 8-hour cardiac case on her first day back, Fitzgerald commented that he "really wasn't a nice guy" and then asked her whether her husband was still out of work. (Id. ¶ 25.) The plaintiff also learned that the department was requiring her and the ten other perfusionists to receive IOHC training and that Fitzgerald had chosen her to be trained first. She asked Fitzgerald whether it would be safe for her to work on IOHC cases while breastfeeding, and he told her that he did not know and that she "should look into it." (Id. ¶ 31.)

On March 3, 2010, the plaintiff contacted various BWH personnel to investigate the safety of IOHC procedures. Dr. Dean Hashimoto, Chief of Occupational and Environmental Medicine, told her that it was safe for her to work on IOHC cases but that she should direct concerns to her supervisor. Steve Bloom, Director of Environmental Affairs, noted the plaintiff's concern that no safety tests had been done with respect to the precise setting or combination and dosage of drugs at issue, and he sent her relevant documents. Despite the plaintiff's concerns, Fitzgerald scheduled her for the three IOHC cases required for training. The following week,

Fitzgerald emailed the perfusionists asking whether they wished to work on IOHC cases. The plaintiff and Mike McAdams both responded "no." McAdams told Fitzgerald that he did not want to do IOHC cases because he and his wife were trying to conceive, and Fitzgerald did not staff him on any IOHC cases, but he continued to schedule the plaintiff for IOHC cases.

In April 2010, the plaintiff learned that Fitzgerald had told staff that he was "keeping Anne out" of IOHC cases because they were unsafe for women who were pregnant or breastfeeding. (Id. ¶ 52.) The plaintiff became enraged and confronted her supervisor, which prompted his "retaliatory" behavior, consisting of the following:

1. failing to ask the staff, as she requested, whether anyone could cover for her so that she could attend the wake of a colleague's family member;

2. insisting that the plaintiff go to Atlanta for robotic surgery training, although she could not travel while breastfeeding, and responding, "They have refrigerators in Atlanta";

3. forwarding her vacation request to the entire staff as a reminder that all vacations needed to be coordinated to ensure sufficient coverage and that vacation may be approved on a seniority basis;

4. attempting to reschedule the plaintiff's husband's operation at BWH and directing other staff not to cover for the plaintiff;

5. following her to the operating room, yelling at her angrily in front of other staff, "[Y]ou are not leaving this room - your priority is to watch this patient and you will not leave this room"; putting her in fear that he was going to hit her;

6. creating a "scene" in the operating room while the plaintiff was taking a bathroom break.

(Id. ¶¶ 57-76.)

## II. Discussion

### A. Count I: Discrimination Under Title VII and M.G.L. Ch. 151B

The plaintiff alleges that her supervisor discriminated against her because of her gender and pregnancy. To maintain her claim for pregnancy discrimination, the plaintiff must show that

"(1) she was pregnant at the relevant time, (2) her job performance was satisfactory, but (3) her employer took some adverse employment action against her while (4) treating non-pregnant employees differently." Gorski v. New Hampshire Dept. of Corr., 290 F.3d 466, 475 (1st Cir. 2002). The same elements apply to a prima facie showing of gender discrimination.

The plaintiff fails to plead sufficient facts to support the position that she was treated differently from non-pregnant employees, as all the perfusionists were expected to participate in IOHC procedures and training and to be on-call at various times. Instead, her position is that she should have been excused from such responsibilities and thereby treated differently from other employees. The single factual allegation to demonstrate disparate treatment, that a male colleague was excused from IOHC cases while the plaintiff was not, is not enough to allow a "reasonable inference that the defendant is liable" under this theory of recovery. Sepulveda-Villarini v. Dep't of Educ. of Puerto Rico, 628 F.3d 25, 29 (1st Cir. 2010).

The plaintiff's claim that her supervisor created a hostile work environment, forcing her to leave her job, likewise fails. The Complaint includes several examples of what the plaintiff alleges are hostile or discriminatory comments, which would typically meet the pleading standard. See Gorski v. N.H. Dep't of Corr., 290 F.3d 466, 474 (1st Cir. 2002). However, Count I of the Complaint alleges that "Mr. Fitzgerald's conduct created a hostile work environment for Mrs. Oulton, of which BWH was aware and failed to take any action to correct." (Compl. ¶ 108.) The only conduct by Mr. Fitzgerald of which BWH is alleged to have any knowledge as her employer was refusing to excuse the plaintiff from IOHC procedures, and such conduct, as explained above, is not gender- or pregnancy-discriminatory as a matter of law. Accordingly, this Count is also subject to dismissal.

B.      Count II: Retaliation Under Title VII and M.G.L. Ch. 151B

The plaintiff also claims that BWH retaliated against her in violation of Title VII and Massachusetts General Laws ch. 151B. To survive a motion to dismiss, the plaintiff must demonstrate: (1) "that [she] engaged in an activity that is protected by the statute"; (2) "that [she] suffered an adverse employment action"; and (3) "a causal link between the protected activity and the adverse employment action." Sisco v. DLA Piper LLP, 833 F. Supp. 2d 133, 147 (D. Mass. 2011) (citations omitted).

The Complaint alleges that "BWH's actions . . . constitute unlawful retaliation against Mrs. Oulton for asserting her rights, and the rights of others, under 42 USC §2000e-3 and MGL ch. 151B, § 4(4)." (Compl. ¶ 111.) She engaged in two allegedly protected activities: (1) complaining to various BWH personnel about staffing pregnant or breastfeeding women on IOHC cases without conducting proper safety testing, and (2) arguing with her supervisor about his excusing a male perfusionist from IOHC cases but not excusing her. At least the second protest could be seen as an objection that the employer was making gender discriminatory assignments. That would be a protected activity made unlawful by Title VII or Massachusetts General Laws ch. 151B. This Count survives the motion to dismiss.

C.      Count III: Retaliation Under the Family Medical Leave Act

To maintain her claim for retaliation under the FMLA, the plaintiff "must show that (1) [s]he availed himself of a protected right under the FMLA; (2) [s]he was adversely affected by an employment decision; (3) there is a causal connection between the employee's protected activity and the employer's adverse employment action." Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 161 (1st Cir. 1998) (citations omitted). Here, the plaintiff alleges that after she returned

from maternity leave, her supervisor retaliated against her by substantially increasing her hours and her shifts as the on-call or alternate on-call perfusionist. She alleges that as a consequence, she was "almost guaranteed to be at the hospital for a 24-hour shift." (Compl. ¶ 23.) The defendant argues that the supervisor made normal scheduling decisions which not rise to the level of adverse employment actions.

An adverse employment action is one which "a reasonable employee would have found . . . materially adverse," meaning "it well might have 'dissuaded a reasonable worker from [taking FMLA leave].'" Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006). It is plausible here that a reasonable employee in the plaintiff's position would have found such a change in working conditions materially adverse. Dismissal is inappropriate when it is plausible that the allegations, "if bolstered in the course of discovery, might support a retaliation claim." Fisher v. Town of Orange, 2012 WL 639461 (D. Mass. Feb. 24, 2012). Discovery may, for example, reveal that the plaintiff was the only perfusionist whose schedule was altered during the relevant time period. This Count is adequately pled.

D.    Count IV: Retaliation Under the Health Care Whistleblower Act (M.G.L. ch. 149, § 187(b))

The statute states, in relevant part:

(b) A health care facility shall not refuse to hire, terminate a contractual agreement with or take any retaliatory action against a health care provider because the health care provider . . .
(1) discloses or threatens to disclose to a manager . . . an activity, policy or practice of the health care facility . . . that the health care provider reasonably believes is in violation of a law or rule or regulation promulgated pursuant to law or violation of professional standards of practice which the health care provider reasonably believes poses a risk to public health . . . [or]
(3) objects to or refuses to participate in any activity, policy or practice of the health care facility . . . which the health care provider reasonably believes is in violation of a law or rule or regulation promulgated pursuant to law or violation of

professional standards of practice which the health care provider reasonably believes poses a risk to public health.

M.G.L. ch. 149, § 187(b). The plaintiff contends that BWH, through her supervisor, took retaliatory action against her because she disclosed to various BWH managers the Perfusion Department's practice of assigning pregnant and breastfeeding employees to IOHC cases, which she believed violated professional standards of care, and objected to such practice for that reason.

"The statute . . . is designed to safeguard patient care by protecting the rights of health care providers who expose deficiencies in that care that violate laws or regulations or professional standards that endanger public health." Commodore v. Genesis Health Ventures, Inc., 824 N.E.2d 453, 460 (Mass. App. Ct. 2005). The problem for the plaintiff is that she did not express concerns about patient care but rather about her own safety and the safety of similarly situated employees. Her unsupported argument that the legislature probably intended the statute, given its remedial nature, to be interpreted broadly is unpersuasive.

### III.  Conclusion

For the foregoing reasons, the defendant's Motion to Dismiss (dkt. no. 6) is GRANTED as to Counts I and IV and DENIED as to Counts II and III.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge